25579. ALLEN *v.* THE STATE.

DECIDED SEPTEMBER 15, 1936.

*W. A. Dampier,* for plaintiff in error.
*Lester F. Watson, solicitor,* contra.

MacINTYRE, J. The accusation, dated September 11, 1935, charged that Major Allen illegally had, controlled, and possessed intoxicating liquor on that date. On December 3, 1935, Allen was tried and convicted of the offense charged. The only question raised by the motion for new trial is whether the evidence supports the verdict.

B. F. Branch, a deputy sheriff, testified, in part, as follows: "Major is a married man. I visited his home . . to make a

raid for whisky. As we were coming to the back of Major Allen's house, we saw . . his wife's daughter and another woman come out of the back door with a tub . . and run to a little patch of weeds and brush and set the tub down. . . There were three gallons of whisky in the tub. . . Major wasn't at the house. We ran up with him down in the bottom before we got to the house, and when I got up there where the whisky was I looked back and Major was gone. As quick as we got the whisky we got in the car and left, looking for Major. . . It was about five weeks after that that we saw Major again. Major was close enough to his house to see me when I got the tub of whisky. . . We made a search for Major during that five weeks, but couldn't find him." On cross-examination Branch testified, in part: "I had never seen Major there, because I had never been to that house. So far as seeing Major, I don't know that he has ever been there. · . . I saw them bring the tub with the whisky in it out of Major's house. . . The only reason I know that Major is married is because his wife said Major was her husband." M. D. Singleton, another deputy sheriff, testified in the main as did Branch. He swore, in part: "I talked to Major's wife, Queen Allen, on that occasion. I know the reputation of this house for dealing in and handling whisky. It is bad. That was in . . Georgia, Laurens County. I know that Major has been to that house. . . I think I have seen him there but one time prior to this raid, and that was about a month before the raid. I don't know whether he is married. . . I didn't see him married. I only know what his wife said. . . Major was down in the bottom then, about one hundred yards from the house. He was down there selling whisky. I didn't see him selling it, but I know he was. . . There had been whisky cartons, barrels, and boxes and things down there where the negro had been selling whisky. . . From what I saw I would swear that he was selling whisky."

E. C. Pierce, chief of police of Dublin, swore, in part: "Major was coming down by the court-house, and he fell down; he was so drunk he couldn't walk. That was on the 6th day of last February. . . We didn't try him; he entered a plea of guilty. . . We found a pint of whisky on him. We didn't report that to the county officers."

The only material part of the defendant's statement to the jury

is as follows: "The time they say they found the whisky and I had so much whisky in that bottom, I had just come to town that Saturday. I had been in Atlanta since the first of August, and I just had been in town before that."

"In this State the husband is recognized by law as the head of his family; and where he and his wife. reside together, the legal presumption is that the house and all the household effects, including any intoxicating liquors, belong to the husband as the head of the family. The presumption of course is rebuttable." *Isom v. State,* 32 *Ga. App.* 75 (122 S. E. 722). The strength of this presumption is indicated by this statement in the recent case of *Hill* v. *State,* 50 *Ga. App.* 288, 290 (177 S. E. 826): "This being so, the husband in this case was at least presumed to be in control of the intoxicating liquors, and the fact that a member of his family, who was his son, testified that the liquor was his, made the question as to who was in control of the liquor one for the jury." Of course, "One may have, control, or possess liquor in violation of law and at no time be present at the place of storage or have such liquor in his physical possession." *Hendrix* v. *State,* 24 *Ga. App.* 56 (100 S. E. 55). Under the authorities cited, we are satisfied that the jury was warranted in concluding that the whisky found in the tub belonged to the defendant. It is also true that the testimony of the chief of police of Dublin, that the defendant had on his person a bottle of whisky on February 6, 1935, might be deemed sufficient by the jury to support the conviction. The evidence supports the verdict, and the court did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*